IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RAUL HERRERA-PINA,<br>Reg. No. 24125-180,<br>    Petitioner, | §<br>§<br>§<br>§ | |
| v. | §<br>§ | EP-11-CV-226-PRM<br>EP-02-CR-282-PRM |
| UNITED STATES OF AMERICA,<br>    Respondent. | §<br>§ | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Raul Herrera-Pina's (Herrera) *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (ECF No. 54), filed on June 1, 2011.[1] Therein, Herrera, a citizen of Mexico, challenges his conviction for illegal reentry into the United States after his removal. Herrera maintains that he is actually innocent because the Texas Court of Criminal Appeals set aside the conviction which resulted in his initial removal from the United States. After reviewing the record and for the reasons discussed below, the Court concludes that Herrera has failed to establish his entitlement to § 2255 relief. Accordingly, the Court will deny his motion and dismiss his civil cause. Additionally, the Court will deny Herrera a certificate of appealability.

I.   BACKGROUND AND PROCEDURAL HISTORY

In January 1991, Herrera, a lawfully admitted permanent resident of the United States, pleaded guilty to attempted murder in El Paso County, Texas, and the court imposed a ten-year probated sentence. *See State v. Pina-Herrera*, Cause No. 61141 (243rd Dist. Ct., El Paso Cnty.,

---

[1] "ECF No." in this context refers to the Electronic Case Filing number for documents docketed in EP-02-CR-282-PRM.

Tex. 1991). The court later revoked the probated sentence and sentenced Herrera to ten years' imprisonment. Herrera did not appeal.

After an immigration hearing in March 1999, an immigration judge ordered Herrera's removal from the United States due to the attempted murder conviction. In January 2002, federal authorities found Herrera in El Paso and determined that he had not obtained the Attorney General's consent to reapply for admission. Accordingly, a grand jury indicted him for illegally reentering the United States. With the indictment, the Government filed notice that it would seek an enhanced penalty based on his prior state-court conviction. Herrera elected to forego trial and pleaded guilty to the indictment. The Court accepted Herrera's plea and sentenced him to forty-six months' confinement followed by three years' supervised release. Herrera appealed and the Fifth Circuit Court of Appeals affirmed the judgment. *United States v. Herrera-Pina*, 61 F. App'x 923 (5th Cir. 2003). Consequently, federal officers removed Herrera from the United States to Mexico a second time in July 2005.

In June 2008, Immigration and Customs Enforcement agents again encountered Herrera in El Paso. A check of the Central Index System, a computerized database relating to aliens, confirmed that Herrera had not applied for permission to reenter the United States from either the Attorney General or the Secretary of Homeland Security. After hearing this evidence, a federal grand jury indicted Herrera for this second illegal reentry. With the indictment, the Government filed notice it would seek an enhanced penalty. Herrera pleaded guilty to the indictment and the Court sentenced him to fifty-one months' confinement followed by three years' supervised release. *See United States v. Herrera Pina*, EP-08-CR-1907-PRM (W.D. Tex. Sept. 18, 2008), *aff'd*, 323 F. App'x 365 (5th Cir. 2009). The Court also granted the Government's motion to revoke Herrera's supervised release in the instant criminal case and sentenced him to an

additional eight months' confinement. Herrera is currently confined at the Federal Correctional Institution in Coleman, Florida.

On October 22, 2010, Herrera filed an application for a writ of habeas corpus in the Texas Court of Criminal Appeals challenging his conviction for attempted murder. He argued that "his plea was involuntary because he was not adequately advised of the deportation consequences of his plea" and he was "entitled to relief pursuant to *Padilla v. Kentucky*, 130 S. Ct. 1463 (2010)." *Ex parte Herrera*, 2010 WL 4679881 (Tex. Crim. App. Nov. 17, 2010). The Texas Court of Criminal Appeals accepted Herrera's argument, granted him relief, and remanded him to the custody of the El Paso County Sheriff to answer the charges set forth in the original indictment. *Ex parte Herrera*, 2011 WL 1795270 (Tex. Crim. App. May 11, 2011).

Adhering to the principle that pro se pleadings are construed liberally (*see Johnson v. Atkins*, 999 F.2d 99, 99 (5th Cir. 1993) (citing *Brinkmann v. Johnston*, 793 F.2d 111, 112 (5th Cir. 1986)), the Court understands Herrera to claim that he is actually innocent of his 2002 conviction for illegal reentry. Mot. 5 (asserting his "actual innocence of the crime of conviction since the predicate fact (conviction) has been nullified"). Further, the Court will address four new grounds of relief that Herrera sought to add to his motion: (i) that the Court lacked subject matter jurisdiction to enter a judgment against him for illegal reentry; (ii) that his attorney provided ineffective assistance of counsel by ignoring Herrera's "concerns and statements regarding" his state charge which led to "unreasonable choices"; (iii) that the Government engaged in prosecutorial misconduct by failing to investigate and to realize that his state conviction would later be set aside; and (iv) that his attorneys were ineffective for failing to challenge the state conviction as unconstitutional. Mot. to Am., ECF No. 65. Herrera argues

that the Court should vacate his conviction for illegal reentry given that the Texas Court of Criminal Appeals set aside his attempted murder conviction.

## II.   LEGAL STANDARD

After a defendant has been convicted and exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). Accordingly, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)). Typically, before a court will grant relief pursuant to § 2255, the Petitioner must establish that "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (internal citations omitted).

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal. *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991). When raising issues of jurisdictional or constitutional magnitude after the petitioner has "defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *Murray v. Carrier*, 477 U.S. 478, 479 (1986); *Smith v. Murray*, 477 U.S. 527, 537 (1986)).

With these principles in mind, the Court turns to the merits of Herrera's claims.

## III. ANALYSIS

### A. Herrera Is Not Actually Innocent of Illegal Reentry

In his § 2255 motion, Herrera claims that he is actually innocent of the 2002 illegal reentry offense. He reasons that, by setting aside his conviction for attempted murder, the Texas Court of Criminal Appeals "nullified" a "predicate fact" of his illegal reentry conviction. Mot. to Vacate 4. Thus, he concludes that he is actually innocent.

Since Herrera's claim is one of actual innocence, his failure to raise this issue on direct appeal does not necessarily create a procedural bar to the Court addressing this issue. "To establish actual innocence, [the] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *United States v. Torres*, 163 F.3d 909, 912 (5th Cir. 1999) (citing *Bousley*, 523 U.S. at 622 (citing *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995))).

In this case, a grand jury indicted Herrera, a citizen of Mexico, for a violation of 8 U.S.C. § 1326, when federal agents found him in El Paso, Texas, after he had been previously excluded, deported, and removed from the United States. In order for the Government to obtain a conviction for a § 1326 offense, it must prove that:

> 1) the defendant was an alien at the time of the alleged offense;
> 2) the defendant had previously been arrested and deported;
> 3) the defendant attempted to enter the United States; and
> 4) the defendant had not received the express consent of the Attorney General of the United States to apply for readmission to the United States since the time of his previous arrest and deportation.

*United States v. Cardenas-Alvarez*, 987 F.2d 1129, 1131-32 (5th Cir. 1993). Significantly, Herrera does not claim that he was not an alien, that he had not previously been deported, that he was not found in the United States, or that he had permission to reenter the United States. Herrera's principle argument is that his present conviction and sentence, which was enhanced

pursuant to § 1326(b), should be vacated or reduced because the conviction upon which the enhancement was based has been vacated. This argument, however, is unavailing because it does not lead to the conclusion that he is actually innocent.

First, the existence of a prior conviction is not an element of the offense of illegal reentry; it is a sentencing factor. *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998); *see United States v. Pineda-Arrellano*, 492 F.3d 624, 625-26 (5th Cir. 2007)(explaining the continued applicability of *Almendarez-Torres*). Therefore, the fact that Herrera's prior conviction for attempted murder has been vacated does not undermine any element critical to his conviction for illegal reentry and he is not innocent of the crime for which he is presently being held.

Second, the mere fact that his conviction for attempted murder has been set aside does not, in this case, demonstrate that he is actually innocent of the crime that served as a sentencing enhancement. Only factual innocence is sufficient to demonstrate actual innocence; mere legal innocence or legal insufficiency of a conviction is inadequate. *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotations and citation omitted); *see also Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997) (comparing factual and legal innocence). Rather, Herrera's conviction was vacated because he was not advised of the immigration consequences of his plea. Mot. to Vacate Ex. C (providing the unpublished state court opinion setting aside Herrera's judgment of conviction for attempted murder). Therefore, Herrera prevailed in the state court on procedural grounds by demonstrating that his conviction for attempted murder was legally insufficient. He has not demonstrated his factual innocence of the crime of attempted murder.

Additionally, Herrera has not exhausted the procedural requirements to challenge his prior deportation order. A defendant accused of violating § 1326 may, under limited

circumstances, assert a challenge to the underlying deportation order. *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987). However, he must first exhaust any administrative remedies that may have been available to seek relief against the removal order. *See* 8 U.S.C. § 1326(d)(1) ("In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that . . . the alien exhausted any administrative remedies that may have been available to seek relief against the order.").

Finally, "[i]n order successfully to collaterally attack a deportation order in a § 1326 prosecution, the alien must show (1) that the deportation hearing was fundamentally unfair, (2) that the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the deportation, and (3) the procedural deficiencies caused him actual prejudice." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658 (5th Cir. 1999). "Fundamental fairness is a question of procedure." *United States v. Lopez-Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002). "[I]t is well-settled that "aliens in deportation proceedings are to be 'accorded due process.'" *United States v. Lopez-Vasquez*, 227 F.3d 476, 484 (5th Cir. 2000) (quoting *United States v. Lara-Aceves*, 183 F.3d 1007, 1011 (9th Cir. 1999)). Due process requires that an alien who faces deportation be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard. *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597-98 (1953). A showing of prejudice means that "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." *Benitez-Villafuerte*, 186 F.3d at 658 (citations omitted). "If the alien fails to establish one prong of the three part test, the Court need not consider the others." *United States v. Mendoza-Mata*, 322 F.3d 829, 832 (5th Cir. 2003).

A review of Herrera's immigration record reveals that he filed a motion to re-open his immigration case on December 4, 2008. Gov't's Supplemental Resp. Ex. 14, ECF No. 67. In his motion, he alleged that he should not have been removed because he had a pending state application for a writ of habeas corpus on the state-court conviction and he had a claim of derivative citizenship. *Id.* His motion preceded the Texas Court of Criminal Appeals' decision setting aside his conviction by two and one-half years. Given the absence of evidence that he has amended his motion in his immigration case to reflect his now-vacated state conviction, the Court concludes that he has not exhausted his administrative remedies and cannot presently seek the relief he is requesting.

Even if the Court determined that Herrera had exhausted his administrative remedies, he would still not be entitled to § 2255 relief. He cannot show that his removal hearing was fundamentally unfair because he received notice of the charges, appeared before an immigration judge, and had the opportunity to provide evidence on his own behalf. Gov't's Supplemental Resp. Exs. 2, 3. Moreover, he was afforded the opportunity to appeal the immigration judge's decision, but chose to waive his right to appeal. *Id.* Ex. 2.

Accordingly, Herrera has not exhausted his administrative remedies and cannot prevail in a collateral attack of his deportation order in which he asks the Court to vacate his conviction. Further, to the extent that Herrera asks the Court for resentencing, the Court observes that he has already completed his sentence and such relief is now moot.

**B.   The Court Had Subject Matter Jurisdiction in Herrera's Illegal Reentry Case**

In his first new ground, Herrera argues that the Court lacked subject matter jurisdiction over his conviction. Herrera's challenge to the subject matter jurisdiction of the Court evinces a

misunderstanding of the Court's jurisdiction—the Court's jurisdiction comes from the federal statute and is not contingent on the existence of, or lack of, Herrera's prior conviction.

### C. Herrera's Counsel Was Not Ineffective by Failing to Foresee *Padilla*

In his second new ground for relief, Herrera asserts that his attorney provided ineffective assistance by ignoring Herrera's "concerns and statements regarding" his state charge which led to "unreasonable choices." *Id.*[1] He maintains that these actions led to his conviction, incarceration, and deportation. *Id.* Similarly, in his fourth new ground for relief, Herrera claims that his trial and appellate attorneys in the instant Illegal Reentry case provided ineffective assistance "for asserting the claim that the predicate conviction was unconstitutional; therefore

---

[1] The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions. U.S. Const. amend. VI. Moreover, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal." *Gaudet*, 81 F.3d at 589 n.5. To merit relief on an ineffective assistance of counsel claim, a movant must demonstrate both (1) that his "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 687 (explaining that, unless a defendant demonstrates both elements, the sentence cannot have resulted from a breakdown in the adversary process); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." (citing *Strickland*, 466 U.S. at 687)).

The test's performance prong centers on whether counsel's assistance was reasonable, considering all the circumstances at the time of counsel's conduct. *Strickland*, 466 U.S. at 688. In order to obtain relief, a movant must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Counsel has a wide range of reasonable professional discretion. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A deficiency in counsel's performance, even if professionally unreasonable, does not equal ineffective assistance of counsel; the movant must also demonstrate actual prejudice. *Id.* at 691-92. The test's prejudice prong requires the movant to demonstrate with "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

nonexistent." *Id.* The Court liberally construes Herrera's claim to mean that his attorney did *not* make the claim that his "predicate conviction was unconstitutional."

Herrera's state-court conviction was vacated due to the United States Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), which requires counsel to inform defendants of the immigration consequences of a guilty plea in a criminal case. The Supreme Court decided *Padilla* in 2010, nearly eight years after Herrera's entry of a guilty plea in this cause. As the Fifth Circuit has noted, an attorney's "inability to foresee future pronouncements which will dispossess the court of power to impose a particular sentence which is presently thought viable does not render counsel's representation ineffective; [c]lairvoyance is not a required attribute of effective representation." *Cooks v. United States*, 461 F.2d 530, 532 (5th Cir. 1972) (citing *Brady v. United States*, 397 U.S. 742 (1970)). Hence, the Court cannot reach the conclusion that Herrera's attorney's performance was deficient, as required by the first prong of *Strickland*. Therefore, the Court dismisses Herrera's claim of ineffective assistance of counsel.

### D. The Government Was Not Required to Anticipate That Herrera's State Conviction Would Be Dismissed.

In his third new ground, Herrera claims that "[t]he [G]overnment breached its duties to conduct a thorough factual investigation and Mr. Herrera's right to due process; by filing the jurisdiction expanding § 1326 notice without an adequate investigation."[2] *Id.* at 2. Herrera appears to assert that the Government should have known at the time it sought the enhancement that Herrera's state conviction would later be vacated. Herrera offers no legal support for the existence of a duty requiring such prescience. *Padilla* was not decided until well after Herrera's conviction. Therefore, it is unlikely that any investigation conducted without the help of a

---

[2] This passage is the full text of this claim.

crystal ball could have reasonably allowed the Government to conclude that Herrera's state conviction would later be vacated. Therefore, the Court denies Herrera's claim that the government failed to properly investigate his case.

## IV. EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief. *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). The record in this case is adequate to dispose fully and fairly of Herrera's claims. The Court need inquire no further on collateral review, and an evidentiary hearing is not necessary.

## V. CERTIFICATE OF APPEALABILITY

A Petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issued a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted. *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted). In other words, a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted. *See* 28 U.S.C. § 2253(c) (setting forth the narrow scope of appellate review in habeas corpus matters); *Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002) (holding that a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review on those issues); *but see United States v. Kimler*, 150, F.3d 429, 431 & 431 n.1 (5th Cir. 1998) (explaining that the Fifth Circuit may address an issue not certified by the district court if the Petitioner makes (1) an explicit request,

and (2) substantial showing of the denial of a constitutional right). Although Herrera has not yet filed a notice of appeal, this Court nonetheless must address whether he is entitled to a certificate of appealability. *See* 28 U.S.C. § 2255 PROC. R. 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a certificate as to claims that the district court rejects solely on procedural grounds, the Petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of section 2255 proceedings). Here, reasonable jurists would not debate the Court's finding that Herrera was not actually innocent and there were no transgressions of Herrera's constitutional rights. Therefore, the Court finds Herrera is not entitled to a certificate of appealability.

## VI. CONCLUSION AND ORDER

For the reasons stated, the Court concludes that it should deny Herrera's motion and dismiss his civil cause. The Court further concludes that Herrera is not entitled to a certificate of appealability. Accordingly, the Court enters the following orders:

1. Petitioner Raul Herrera-Pena's "Motion to Amend the Pending Motion to Vacate Filed Under 28 U.S.C. § 2255" (ECF No. 65) is **GRANTED.**

2. Petitioner Raul Herrera-Pena's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF No. 54), including all of the claims presented in his

Motion to Amend (ECF No. 65) are **DENIED** and his civil cause is **DISMISSED WITH PREJUDICE.**

3. Petitioner Raul Herrera-Pena is **DENIED** a **CERTIFICATE OF APPEALABILITY.**

4. All pending motions in this cause, if any, are **DENIED AS MOOT.**

**SO ORDERED**

**SIGNED** this 13 day of April, 2012.

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE